IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

EL PASO DIVISION

| | | |
|---|---|---|
| ROBERTO FRANCO II, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. EP-14-CV-351-MAT |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Plaintiff appeals the decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c), and Rule CV-72 and Appendix C of the Local Court Rules of the Western District of Texas. For the reasons below, the Commissioner's decision is AFFIRMED.

### I. PROCEDURAL HISTORY

On January 17, 2013, Plaintiff filed applications for DIB and SSI in which he alleged

1

disability since September 26, 2012 due to anxiety and a mood disorder. (R.179- 186, 209).[1] After his applications were denied initially and again upon reconsideration, Plaintiff requested a hearing. (R. 106-113, 118-123, 126). On March 6, 2014, Plaintiff appeared with his attorney for a hearing before an Administrative Law Judge ("ALJ"). (R. 25-53). His applications for benefits were denied by the ALJ's written decision issued on April 18, 2014. (R. 11-20). On July 23, 2014, the Appeals Council affirmed the ALJ's decision to deny benefits, thereby making it the final decision of the Commissioner. (R. 1-5).

## II. BACKGROUND

Plaintiff was born on January 17, 1989, making him 25 years old at the time of the ALJ's decision. (R. 179). He has a high school diploma and has attended some college. (R. 209, 210). He has past relevant work experience as a telemarketer, a fast food worker, and a check cashing clerk. (R. 227). At the time of the hearing, Plaintiff reported he was enrolled in twelve credit hours of college classes. (R. 30).

## III. ISSUES PRESENTED

Plaintiff presents the following issues for review: (1) whether the ALJ erred in failing to find Plaintiff's mental impairment meets the requirements of Listing 12.04; and, (2) whether the ALJ committed reversible error by failing to consider whether the claimant was capable of maintaining employment for a significant period of time.

---

[1] Reference to the record of administrative proceedings is designated by "(R. [page number(s)])."

## IV. DISCUSSION

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence on the record as a whole, and whether the proper legal standards were applied in evaluating the evidence. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

In determining whether there is substantial evidence to support the findings of the Commissioner, the court must carefully examine the entire record, but may not reweigh the evidence or try the issues de novo. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). The court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Id.*

### B. Evaluation Process and Burden of Proof

Disability is defined as the "inability to engage in substantial gainful activity by reason of any

medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step sequential process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment or combination of impairments prevents the claimant from performing past relevant work; and, (5) whether the impairment or combination of impairments prevents the claimant from doing any other work. 20 C.F.R. §§ 404.1520, 416.920. A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Greenspan*, 38 F.3d at 236.

The claimant bears the burden of proof on the first four steps of the sequential analysis. *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995). Once this burden is met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). The Commissioner may meet this burden by the use of opinion testimony of vocational experts or by use of administrative guidelines in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982). If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternative work. *Id.*

C. The ALJ's Decision

In his written decision, the ALJ determined as a threshold matter that Plaintiff met the

insured status requirements of the Social Security Act through June 30, 2014. (R. 13). The ALJ found Plaintiff had not engaged in substantial gainful activity since September 26, 2012, the alleged onset date. *Id.* At the next step, the ALJ determined Plaintiff has severe impairments consisting of anxiety and depression. *Id.*

At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14). The ALJ specifically cited to Listings 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders). *Id.* Before reaching step four, the ALJ found Plaintiff retains the residual functional capacity ("RFC ") to perform a full range of work at all exertional levels, but is limited to unskilled one or two step tasks with short, simple instructions, performed in a work environment that is free of fast paced production requirements, involving only simple, work-related decisions and with few if any workplace changes. Further, Plaintiff is limited to work that requires no interaction with the public and only occasional interaction with co-workers. (R. 15).

At step four, the ALJ found that Plaintiff is unable to perform his past relevant work. (R. 18). At step five, based on the testimony of a vocational expert (VE), the ALJ found Plaintiff retains the RFC to perform other work that exists in significant numbers in the national and regional economy, such as garment sorter, plastic press molder, and wire worker stripper. (R. 19). Therefore, the ALJ determined at step five that Plaintiff was not disabled. (R. 20).

D. Analysis of Plaintiff's Claims

   1. <u>ALJ Properly Found Plaintiff's Affective Disorder Did Not Meet Listing 12.04</u>

Plaintiff claims the ALJ erred at step three when he found Plaintiff's mental impairment did not meet the criteria of Listing 12.04 (Affective Disorders). Specifically, Plaintiff argues the

evidence shows he suffers from bipolar syndrome that satisfies the criteria of § 12.04(A)(3). He next argues that the criteria of paragraph C was met, and Plaintiff should have been found disabled at step three.

In analyzing Plaintiff's claim, the Court looks to the regulations governing the third step of the sequential evaluation. At the third step, the ALJ determines whether the medical evidence meets or equals the criteria of a listed impairment in Appendix 1 of the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). The Listing of Impairments in Appendix 1 describes conditions and impairments that are sufficiently severe to prevent an individual from engaging in *any* gainful activity, not just "substantial gainful activity," regardless of age, education or work experience. 20 C.F.R. §§ 404.1525(a), 416.925(a); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Thus, Plaintiff is automatically entitled to benefits if his impairment meets or equals the criteria of one of the listed impairments in Appendix 1 to Subpart P of Part 404. 20 C.F.R. §§ 404.1520(d), 416.920(d). Because the Listings were designed to operate as a presumption of disability that makes further inquiry unnecessary, the medical criteria of the Listings are more restrictive than the statutory disability standard. *Zebley*, 493 U.S. at 532.

The burden of proof rests with Plaintiff to provide and identify medical signs and laboratory findings that support all criteria of a listed impairment. *Id.* at 530; *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). The criteria in the Listings are "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). A mere diagnosis of a condition will not suffice. "For a claimant to show that his impairment matches a listing, it must meet all of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530.

In order for Plaintiff's bipolar syndrome to be found disabling at step three pursuant to Listing 12.04(A)(3), he must establish:

> A. Medically documented persistence, either continuous or intermittent, of . . .
> 3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)
> AND
> B. Resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration;
> OR
> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

Plaintiff does not challenge the ALJ's determination that the paragraph B criteria were not met. Rather, Plaintiff argues his impairment meets the paragraph C criteria because he has experienced multiple episodes of decompensation. Plaintiff's argument, however, neglects to address the fact that in order to satisfy the paragraph C criteria, the repeated episodes of decompensation must meet the strict definition in the Listing. The Listing provides:

> The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. If you have experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, we must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of

7

equivalence.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4).

The ALJ correctly stated the definition of repeated episodes of decompensation in his opinion. (R. 14). He also acknowledged that the record shows Plaintiff has required inpatient psychiatric hospitalizations.[2] The record shows Plaintiff was admitted for inpatient mental health care as follows: December 28, 2012 to January 7, 2013 (11 days); May 24, 2013 to June 3, 2013 (11 days); and, August 26, 2013 to September 6, 2013 (12 days). (R. 307-313, 359-360, 431, 440-441). In other words, although Plaintiff experienced three episodes of decompensation within one year, none of the episodes lasted for at least two weeks. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4). Nor has Plaintiff experienced "more frequent episodes of shorter duration or less frequent episodes of longer duration" that would merit additional consideration under the Listing. Id.

As stated earlier, "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Zebley, 493 U.S. at 530. Accordingly, Plaintiff has not carried his step three burden to show his mental impairment was of listing-level severity. Id.; Selders, 914 F.2d at 619. The ALJ correctly determined at step three that Plaintiff's mental impairments do not meet or equal a listed impairment, and then properly proceeded to the remaining steps in the sequential evaluation. There is no error shown on this ground.

---

[2] The ALJ incorrectly stated that Plaintiff was discharged after only a few days. (R. 16). Nonetheless, this misstatement is not prejudicial since the duration of Plaintiff's hospitalizations, although longer than a few days, were not "for at least 2 weeks" as required by the regulatory definition at 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4).

## 2. No Separate Finding Regarding Ability to Maintain Employment Required

Plaintiff contends the ALJ committed reversible legal error by failing to make a separate finding regarding his ability to maintain employment as required by *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).[3] Plaintiff concedes that such a finding is not required in every case. *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). He argues, however, that such a finding is required in his case because the medical evidence shows he experiences intermittent periods of incapacity due to his severe impairment of bipolar disorder which causes him to experience intermittent mood fluctuations. To show his symptoms "wax and wane," Plaintiff relies on recent low GAF scores[4], his testimony that he had difficulty maintaining employment, and on his report to the consultative examining psychiatrist that he had trouble at work concentrating and remembering what to do and would leave work due to panic attacks. (R. 31-34, 391-392, 405-415).

As acknowledged by Plaintiff, there is no medical opinion in the record regarding the extent to which his mental condition would impede his ability to maintain employment. The ALJ discussed the findings of consultative psychological examiner Randall Rattan, Ph. D. who found that although Plaintiff had an anxious and agitated mood with pressured speech, he was alert, oriented, and

---

[3] In *Singletary*, the Court held that substantial evidence did not support a finding that the claimant "could maintain employment" because his "personal history indicated that he was never able to hold a job for long periods of time" due to mental problems. *Id.* at 822-23.

[4] The Global Assessment of Functioning Scale is used by mental health clinicians and physicians to rate an individual's overall level of psychological, social, and occupational functioning on a scale of 0 to 100. American Psychiatric Association, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). The GAF scale does not have a direct correlation to the severity of listed mental impairments. *See Hill v. Astrue*, 2009 WL 2901530, at *7(S.D. Tex. Sept. 1, 2009) (noting the GAF scale, while potentially relevant, does not directly correlate to an individual's ability or inability to work). The Commissioner has specifically declined to endorse the GAF scale for use in the disability programs. *See Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65 Fed. Reg. 50,746, 50,764-65, 2000 WL 1173632 (Aug. 21, 2000).

cooperative with thought processes that were generally logical, sequential, and coherent. (R. 16-17, 341-345). The ALJ also discussed the findings of consultative psychological examiner James W. Schutte, Ph. D. who opined Plaintiff's ability to reason seemed mildly impaired due to a mood disorder, and his ability to make occupational, personal, and social adjustments seemed moderately impaired due to a mood disorder and anxiety. (R. 17, 393-394). The ALJ also discussed the treatment notes and Medical Source Statement provided by treating psychiatrist Dr. Vanderpool. (R. 17-18). He determined the Medical Source Statement should not be given controlling weight as it was internally contradictory, did not contain medical/clinical findings to support the assessment, and was contrary to the findings of the consultative examiners. (R. 17, 403-404).

The ALJ noted that the treatment records indicated Plaintiff's symptoms have remained stable on medication. (R. 17-18). He correctly observed that two consultative psychiatric examiners who performed thorough mental examinations on Plaintiff found no significant functional restrictions. (R. 18). The ALJ noted that the treatment records from Plaintiff's primary mental health care providers show that his "overall mental health has remained stable" and controlled with medication from January 2013 through February 2014, with occasional exacerbations of symptoms. (R. 16-18, 336-339, 378-389, 405-416). Further, it appears that during the relevant time period Plaintiff's symptom exacerbations were related, at least in part, to medication non-compliance and substance abuse. At the hearing, Plaintiff testified his use of illicit substances was "a last resort" during a time when he was not getting proper treatment. (R. 42). He stated he feels things would have gone differently for him if he had received the proper treatment earlier. (R. 43). Significantly, Plaintiff testified he believed if he was rehired now at certain of his old jobs he would be able to perform the work. (R. 42).

Although the ALJ did not discuss Plaintiff's GAF scores, this alone is not error as the ALJ is not required to discuss every piece of evidence considered. The ALJ discussed in detail Plaintiff's mental health medical records, including hospitalizations, follow up treatment, the results of two consultative psychiatric examinations, the opinions of the state agency medical consultants, and the Medical Source Statement provided by treating psychiatrist, Dr. Vanderpool. The ALJ concluded the medical records as a whole indicate Plaintiff's symptoms are well controlled when he takes his medication as prescribed. (R. 18).

There is nothing in the opinion that indicates the ALJ failed to address the mental health evidence in the context of Plaintiff's ability to work on a regular and continuing basis.[5] Plaintiff testified his biggest problem was "functioning in public . . . being around people." (R. 43). The ALJ found this testimony to be credible and accounted for Plaintiff's limitations by limiting him to unskilled one or two step tasks with short, simple instructions, performed in a work environment that is free of fast paced production requirements, involving only simple, work-related decisions and with few if any workplace changes. Further, the ALJ limited Plaintiff to work that requires no interaction with the public and only occasional interaction with co-workers. (R. 15). Plaintiff has not shown his condition waxes and wanes with a frequency or intensity not taken into account when the ALJ assessed the RFC.

It is the task of the ALJ to weigh the evidence. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). It is the task of this Court to determine if there is substantial evidence in the record as a whole to support the ALJ's decision. *Id.* (citing *Greenspan*, 38 F.3d at 240). As substantial

---

[5] In the Applicable Law section of his opinion, the ALJ stated that an individual's RFC is "his ability to do physical and mental work activities **on a sustained basis** despite limitations from his impairments." (emphasis added) (R. 12).

evidence supports the ALJ's decision, it must be affirmed. *Spellman*, 1 F.3d at 360.

## CONCLUSION

It is therefore ORDERED that the decision of the Commissioner be, and it is hereby, AFFIRMED.

SIGNED and ENTERED this 31st day of March, 2016.

/s/ Miguel A. Torres
MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE